**NYSTROM et al. v. JANEWAY.**
**Patent Appeal No. 5540.**

United States Court of Customs and Patent Appeals.
March 1, 1949.

George Heidman, of Chicago, Ill., and Rodney Bedell, of St. Louis, Mo. (Joseph H. Milans, of Washington, D. C., of counsel), for appellants.

Robert E. Harris, of Detroit, Mich. (Francis D. Thomas and Harry W. F. Glemser, both of Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding to appellee priority of invention of the subject matter defined in a single count reading as follows: "In a railway truck, an axle and wheel, a journal box carried thereby, an equalizer supported upon the journal box and extending longitudinally of the truck, the equalizer and journal box being movable together vertically of the truck and being held against relative movement longitudinally of the truck, a load carrying truck frame spring-supported on the equalizer and free of association with the journal box except through the equalizer, and *an elongated anchor rod extending transversely of the truck and connected at its end portions to the equalizer and to the load carrying frame to hold the equalizer and load carrying frame against substantial movement relative to each other transversely of the truck* but accommodating their movement relative to each other in a vertical direction." (Italics ours.)

The italicized part of the count is said by appellants to indicate specifically the novel and essential feature of the truck defined by the interference count.

The invention here involves a four wheel truck which is positioned beneath each end

of a railway car. The truck comprises two widely spaced axles to each end of which a car wheel is affixed; journal boxes near the wheels designed to support the ends of beams which extend from axle to axle longitudinally and are known as "equalizers"; supported by the equalizers with springs thereon is a frame supporting a beam which extends across the middle of the truck, called a "bolster." The body of the car is positioned on the two bolsters near the opposite ends of the car. There does not seem to be any dispute that the italicized portion of the count was designed for a structure, in addition to the elements of the truck above set out, to prevent substantial movement from side to side of parts of the truck, while the railroad car to which it has been affixed is in motion.

The interference involves a patent of appellants, serial No. 2,350,567, dated June 6, 1944, on an application, serial No. 410,-354, filed September 11, 1941, relating to Railroad Car Trucks, and an application of appellee, serial No. 496,998, filed August 2, 1943, relating to Railway Passenger Car Trucks. That application is a continuation-in-part of an application, serial No. 425,273, filed January 1, 1942, relating to a Railway Vehicle Truck.

Both parties filed preliminary statements, and took testimony during the course of which many exhibits were received in evidence.

Appellants alleged in their preliminary statement that the first drawing of the device and first disclosure of the invention to others were made on or about November 1, 1940; reduction to practice on or about December 6, 1940, by inclusion of the truck in a railway car which operated successfully; first written description of the invention on or about January 20, 1941; and the exercise of reasonable diligence in adapting and perfecting the invention beginning on or about November 1, 1940.

The preliminary statement of appellee alleged that the first drawings of the invention, first written disclosure thereof, and disclosure of it to others were made on or about September 15, 1939; reduction to practice on or about October 31, 1939, by causing to be made a full-size device, which was successfully operated; and the exercise of reasonable diligence in adapting and perfecting the invention beginning about September 15, 1939.

The count, which is claim 3 of appellants' patent, was copied by appellee to provoke the interference. Appellee's right to make the claim was not questioned throughout the proceeding and is not directly questioned now.

The Board of Interference Examiners held that appellee had established a date of conception prior to November 1, 1940, which is the earliest date alleged in the preliminary statement of appellants. That holding was based upon an exhibit which is a blueprint made from a drawing dated July 8, 1940. The limitations of the count were applied by appellee to that exhibit and his testimony supported the count substantially, as disclosed in his application. The board held that appellee had reduced the invention to practice as early as March 1941 by reason of evidence of successful road tests, wherein the device of appellee was incorporated in a railway car which was operated on the lines of the New York Central Railway from February 20 to March 27, 1941.

Appellants neither challenge the correctness of the dates which were awarded to appellee nor deny that tests were actually made by him on the dates shown in appellee's record. They contend that the tested truck of appellee does not correspond to the structure defined in the italicized portion of the count. The earliest date alleged by appellants for reduction to practice of their truck is not later than April 28, 1941.

It appears that appellants are connected with the Chicago, Milwaukee, St. Paul & Pacific Railroad, appellant Nystrom since 1922 and appellant Green since 1927. The former is the Chief Mechanical Officer and the latter, who at one time was in the drafting department of the company, is Assistant Mechanical Engineer The railroad constructs and repairs in its own shops much of its rolling stock. Nystrom's duties related to the construction, maintenance, and proper operation of such stock, and he collaborated with Green in efforts to improve the riding qualities of railroad trucks.

Appellee is a research engineer employed by the Chrysler Corporation, having been in that capacity since 1931. At the time of the taking of his testimony, he was the head of the Dynamics Research Department, engaged primarily in the development of railroad rolling stock.

It appears that both parties worked on the production of several trucks for railway cars. The first type of truck of appellee, testified to in the record, was identified by a code number, PA-2-M. That type was disclosed in a blueprint exhibit dated March 1939, and a photograph in evidence bearing a receiving date of October 13, 1939. Appellants did not contend that that type of truck supports the count, and the board properly so held.

A second type of truck, which was never built, is identified by the code number, PA-3, and was illustrated in certain blueprints in evidence, the first of which, by stipulation, was accepted as made at least as early as the date stamped on the exhibit, December 28, 1939. It was also stipulated that a drawing from which the second blueprint was made was completed on January 16, 1940. In that type of truck four transverse straight elongated rods, comprising ball and flexible end connections, were provided to control relative movement between the equalizer at one end and the load support frame on the other.

A third truck, identified as PA-2-M2, was thereafter built. It comprised similar provisions to those shown in the exhibits concerning the PA-3 truck and similar straight elongated rods for the purpose of controlling relative transverse movement between equalizers and the load support frame. The blueprint in evidence, showing the structure of that truck, was stipulated to have been made from a drawing dated July 8, 1940.

In his oral testimony, appellee applied the terms of the count, which conformed to his specification, to the blueprint exhibit. The board, in our opinion, properly held that appellee established a date of conception of the subject matter of the count prior to November 1, 1940, the earliest date available to appellants. It did not fix any definite date of conception to appellee but it appears to us that such date was at least as early as January 16, 1940, to which we referred in discussing truck type number PA-3.

The Board of Interference Examiners in its decision set out in detail the material evidence pertaining to the structure of the PA-2-M2 truck, but it is not necessary for us to repeat what was there said.

The truck, PA-2-M2, as hereinbefore mentioned, was subjected to road tests which were conducted from February 20 to March 27, 1941. The tests, which consisted in putting the truck in actual operation, were made on the New York Central Railroad between Albany and Utica. The car, to which the truck was affixed, had on its floor a glass panel through which the witnesses, highly skilled in the art, observed the operation of the truck and its component parts. The testimony of all of the witnesses and the test records in evidence show that in its operation, the truck was found to be very satisfactory with respect to limiting the relative movements of its parts and also to all of its lateral riding qualities; that no trouble with the lateral stabilizer had been experienced; and the truck was thoroughly inspected throughout the run and at the end thereof, and no mechanical defects were found in its construction.

Counsel for appellants argue vigorously concerning the meaning of "substantial movement" appearing in the count, but concede that, as far as this interference is concerned, the truck of appellee parallels that of appellants, except for the alleged relative lateral movement of the equalizers and load carrying frame. In the brief of appellants it is alleged that the device in the tested truck, the transverse elements of which were held by the board to maintain the truck frame and equalizers against substantial relative movement transversely of the truck, do not meet the italicized portion of the quoted count in that the link connections allow a ⅜ inch to ½ inch lateral movement in opposite directions from a normal position, and that, such connections, therefore, permit a possible total movement of 1¼ inches. Such movement is contended by appellants to be "substantial." Appellants, by this contention, ap-

pear to be indirectly questioning the right of appellee to make the count. This may not be done for the reason that they made no motion to dissolve the interference.

■ We find nothing in the record defining "substantial movement." On the contrary, it is obvious that such expression of itself does not exclude *all* transverse movement. Some such movement would necessarily take place in the structure of appellants for their transverse anchor rod has at each end a rubber pre-compressed disc joint through which some lateral movement must take place with respect to vertical movement in the truck. While in a different setting, we think, what was said by this court in the case of Robins v. Wettlaufer, 81 F.2d 882, 23 C.C.P.A. Patents, 952, cited by the board in its decision, has some application here. In that case we held that the term "substantially coincident with" or "close to" does not mean "coincident with" or "at."

The arrangement of the means holding the equalizer and the load carrying frame against substantial movement relative to each other transverse of the truck, differs in the trucks of the parties. Both such means, however, in our opinion, are, by their very nature, cushioning means. In other words, there must be some lateral movement, but its effect, as far as the car is concerned, is cushioned to provide for comfortable riding. As has been mentioned, the pre-compressed rubber washers at either end of appellants' anchor rod are the means said to obtain the desired result, where as in the truck of appellee, there is a rubber connection in shear (reactive to torsion strain) at one end of his transverse link, and a ball on the other end which bring about an identical result.

When road conditions over which the truck passes produce lateral strain, the rubber means of appellee are put to a torque or twisted strain, while in the apparatus of appellants, the strain is opposed by pre-compressed washers. That, however, in our opinion, does not render the truck structure of appellee different from the structure defined in the count.

It was contended below by counsel for appellants, and is contended here, that there is no visual proof of the existence of the transverse links in evidence. In dealing with that contention, the board properly observed that the photographs in evidence were progress photographs showing "various stages of assembly" and that it was impossible to see the end of appellee's link at the point from which one photograph was taken. The board, in view of the record, correctly stated that the transverse link of appellee's device corresponds to the limitation set out in italics in the quoted count and that it was present during the road tests. Since it is clear to us that a truck was constructed by appellee in accordance with all of the limitations of the count and was successfully tested between February 20 and March 27, 1941, we hold that the board did not err in awarding reduction of the invention to practice to appellee as early as March 1941.

■■ In view of what has been hereinbefore set out, it is unnecessary to discuss the record of appellants. They are bound by their earliest date of November 1, 1940, for conception of the invention. It appears from their record that the type of truck herein involved was completed by them by April 25, 1941, and that the truck was successfully reduced to practice not later than April 28, 1941. Since all of those dates are later than those awarded to appellee, they are clearly of no avail to appellants. Other questions of minor importance have been raised in the brief of appellants, and, while they have been given consideration, it is not necessary to discuss them.

For the reasons hereinbefore set out, the decision of the Board of Interference Examiners is affirmed.

Affirmed.